UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 26-163 LMP/DTS |
| Plaintiff, | ) | **INDICTMENT** |
| v. | ) | 17 U.S.C. §§ 1201, 1204<br>18 U.S.C. § 371<br>18 U.S.C. § 2320 |
| BENJAMIN PALEY, | ) | |
| Defendant. | ) | |

The UNITED STATES GRAND JURY charges:

## DEFINITIONS

1. Network Switch: A network switch is networking hardware that allows multiple devices to connect to a computer network and directs traffic among those connected devices. Switches are used to maintain computer networks across a wide variety of industries and sectors, including businesses, universities, hospitals, and government agencies.

2. Technological Measure: A "technological measure" refers to a measure designed to control access to or use of a protected work. "[A] technological measure 'effectively controls access to a [copyrighted] work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

3. Circumvention: "Circumvention" is the act of bypassing, avoiding, removing, deactivating, or impairing a technological measure or device that controls access to a work protected by U.S. copyright law.

SCANNED
SEP 2 2 2026
U.S. DISTRICT COURT MPLS

4. Circumvention Device: A "circumvention device" is an apparatus or software designed to bypass, avoid, remove, deactivate, or impair a technological measure that controls access to or use of a protected work without the authority of the copyright owner.

5. Encryption: "Encryption" is the use of a cryptographic method to protect sensitive data. Typically, sensitive data is encrypted using an algorithm to make it readable only by authorized users who possess the key or cipher needed to decrypt the data.

6. License Key: A license key is a code consisting of a complex string of characters or numbers that is used to enable a license for a certain feature or function.

7. Brocade License Key: A Brocade license key was a code that was specific to a certain switch's serial number. Brocade used license keys as part of its technological measures to limit access to the copyrighted code for the additional features only to users who had a license and paid a license fee. The license keys were associated with additional features, including Port on Demand, Trunking, Advanced Extension, Integrated Routing, Extended Fabric, and the Enterprise Bundle.

8. Port on Demand License: A Port on Demand License enabled additional ports on a Brocade switch. Brocade switches initially have a certain number of ports enabled, such as 8 of the 24 ports on a 24-port switch. With a Port on Demand License, a user can enable additional ports (typically 8 at a time).

## INTRODUCTION

At times material to this Indictment:

9. Defendant BENJAMIN PALEY co-owned and operated various business entities, including Company 1, an information technology business based in Plymouth, Minnesota.

10. Co-conspirator W.H. was an account manager at Company A, an information technology business based in Hamel, Minnesota, that sold computer systems and related software. At Company A, W.H. primarily sold refurbished equipment.

11. Co-conspirator D.R. was a vice president at Company B, an information technology business based in Winston-Salem, North Carolina that sold computer systems and related software. At Company B, D.R. primarily sold network storage equipment.

12. Broadcom Inc. was a global technology company headquartered in Palo Alto, California. Broadcom owned the subsidiaries Brocade Communication Systems, Inc. and Avago Technologies International Sales Pte. Limited (ATIS). ATIS held the intellectual property rights and Brocade Communication Systems, Inc. was an authorized co-party in intellectual property enforcement actions.

13. Brocade Communications Systems, Inc. ("Brocade") was a global technology company headquartered in San Jose, California. Brocade manufactured

and sold computer networking products, including equipment commonly known in the technology sector as a "Brocade switch."

14. In order to function, Brocade switches included an installed copyrighted computer program known as the "Fabric Operating System," or "Fabric OS." Among other functions, the Fabric OS included code for unlocking and operating the features of the switch, including advanced proprietary features that are only available with the purchase of an additional license.

15. Customers seeking to enable an advanced feature on a Brocade switch were required to purchase a license and pay a licensing fee to Brocade in order to access the copyrighted code enabling that feature. Purchasing the license involved several steps, requiring a user to (1) access an authorized website, (2) provide the serial number for the switch, (3) identify the chosen license, (4) purchase a transaction key, and (5) enter the transaction key back into the website to obtain a specific license key. The user would then enter the license key into the switch and, if the Fabric OS verified it was correct, it would unlock the code for the associated additional feature in the Brocade switch. The amount of the fee depended on the nature of the additional feature the license unlocked. Licenses for Brocade's switches were sold by Brocade and authorized sellers for prices that ranged from around $1,400 for more basic additional features to over $100,000 for the most advanced features in the Fabric OS.

16. Brocade's license keys were designed to be mathematically complex to prevent unauthorized users from "cracking the code" and circumventing the technological measures limiting access to Brocade's computer code that enables the licensing technology to unlock additional features.

17. A "key generator" or "keygen" was a type of computer program that could be used to "crack the code" to create unauthorized software license keys that circumvented Brocade's technological measures. Keygens were used to "crack the code" and generate unauthorized license key strings, thereby circumventing a company's technical measures preventing unauthorized use of license keys.

18. Unauthorized license keys were illicitly sold for a fraction of the price of a legitimate license transaction. Each unauthorized license key was created to circumvent technological measures limiting features on a particular switch and consequently had no commercially significant purpose outside of unlocking the feature on a particular switch.

19. The United States Patent and Trademark Office is an agency of the United States that, among other functions, examines and registers trademarks. A trademark is a word, name, symbol or device that is intended to identify and distinguish one producer's goods from those manufactured or sold by others and to indicate the source of the goods so that consumers are not confused about the source of the good.

20. The following trademarks were registered in the principal registry in the United States Patent and Trademark Office:

| **Description** | **Owner** | **Reg. No(s)** | **Serial No(s)** |
|---|---|---|---|
| The mark consists of a stylized letter "B." Color is not claimed as a feature of the mark. | Broadcom Inc. | 3450116<br>3462997<br>3458695 | 77038551<br>77038526<br>77038505 |
| The mark consists of a stylized letter "B." The color red is claimed as a feature of the mark. | Broadcom Inc. | 3462964<br>3468561<br>3445761 | 77027603<br>77027601<br>77027597 |
| Brocade (word mark) | Broadcom Inc. | 2153602<br>4040988<br>4048168 | 75247796<br>85213304<br>85213308 |
| | International Business Machines Corporation | 6436503 | 79296661 |
| IBM (word mark) | International Business Machines Corporation | 6436502 | 79296659 |
| EMC (word mark) | Dell Inc. | 2142157<br>3089009 | 75188055<br>76180853 |
| DELL EMC (word mark) | Dell Inc. | 6024468 | 87251930 |
| The mark consists of the word DELL with the E in a slanted position. | Dell Inc. | 1860272 | 74250269 |
| | Dell Inc. | 1855555 | 74378751 |

| | | | |
|---|---|---|---|
| | HP Hewlett Packard Group LLC | 1842724 | 74328107 |

**<u>COUNT ONE</u>**
(Conspiracy)

**THE CONSPIRACY TO CIRCUMVENT TECHNOLOGOCIAL MEASURES AND TO TRAFFICK IN CIRCUMVENTION DEVICES**

21. The factual allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

22. Beginning on an unknown date, but from as early as in or around 2014, and continuing thereafter until at least in or around April 2022, in the District of Minnesota, and elsewhere, the defendant,

**BENJAMIN PALEY,**

did knowingly and intentionally conspire and agree with co-conspirators W.H., D.R., and others, known and unknown to the grand jury, to commit offenses against the United States, to wit:

a. Knowingly and willfully, and for purpose of private financial gain, circumventing a technological measure that effectively controls access to a work protected under Title 17 of the United States Code, in violation of Title 17, United States Code, Sections 1201(a)(1)(A), and 1204(a)(1); and

b. Knowingly and willfully, and for purposes of private financial gain, manufacturing, importing, offering to the public, and trafficking in a

technology, product, service, device, component, and part thereof, that is primarily designed and produced for the purpose of circumventing a technological measure that effectively controlled access to a work protected under Title 17 of the United States Code, in violation of Title 17, United States Code, Sections 1201(a)(2)(A) and 1204(a)(1).

**Object of the Conspiracy**

23. The object of the conspiracy was for defendant PALEY and his co-conspirators to use and traffic in unauthorized license keys obtained with the intent to bypass the technological measures Brocade put in place to control access to its copyrighted code and, by so doing, to obtain money for themselves through selling the unauthorized license keys at a heavily discounted rate to resellers and customers for ultimate use by end-user purchasers.

**Manner and Means of the Conspiracy**

24. It was part of the conspiracy that:

a. The conspirators used a keygen to generate unauthorized license keys that were functionally indistinguishable from Brocade's legitimate licensing tools and were used to bypass the technological measures Brocade established through its website and in the Fabric OS limiting access to the additional features.

b. D.R. and W.H. routinely communicated with clients and prospective customers who sought to purchase switches and license keys through D.R. and W.H.

c. D.R. and W.H. requested switch information from their various customers and provided that information to at least one other co-conspirator, PALEY, knowing that PALEY would procure corresponding unauthorized license keys that unlocked access to the code necessary to enable additional ports or features on the switches.

d. PALEY possessed and sold to D.R. at least 1,964 unauthorized license keys for switches at amounts substantially below the market rate for legitimate license key sales. These license keys were for a variety of licenses, including the Port on Demand, Trunking, and Enterprise Bundle features.

e. PALEY possessed and sold to W.H. at least 1,673 unauthorized license keys for switches at amounts substantially below the market rate for legitimate license key sales. These license keys were for a variety of licenses, including the Port on Demand, Trunking, and Enterprise Bundle features.

f. PALEY completed the transactions by providing unauthorized license keys in exchange for payments from D.R. and W.H..

g. In furtherance of the conspiracy, PALEY communicated with others, including D.R. and W.H., about unauthorized license key transactions through email messages.

h. In furtherance of the conspiracy, PALEY communicated with others, including W.H., about unauthorized license key transactions through periodic face-to-face meetings in Minnesota as well as through phone calls.

i. In connection with unauthorized license transactions, PALEY repeatedly caused D.R. and W.H. to provide hundreds of thousands of dollars to be paid to bank accounts at the request of PALEY and other co-conspirators.

j. PALEY, W.H., D.R., and others obtained proceeds of the fraudulent conspiracy for their own personal benefit.

**OVERT ACTS**

25. To effect the object of the conspiracy, defendant PALEY together with others committed and caused to be committed the following overt acts, among others, in the District of Minnesota, and elsewhere:

a. On or about November 28, 2018, W.H. sent an email to Email Account 1, an email account used by others in furtherance of the conspiracy, including PALEY. W.H.'s email requested unauthorized Brocade license keys for the Port on Demand feature.

b. On or about November 28, 2018, W.H. received an email from Email Account 1 containing unauthorized license keys capable of unlocking the code for the Port on Demand feature on the Brocade switches matching the technical information in W.H.'s November 28, 2018 email order.

c. On or about November 28, 2018, W.H. emailed a purchase order to Email Account 1 used by others in furtherance of the conspiracy, including PALEY. W.H.'s purchase order was for an unauthorized Brocade license key transaction with

PALEY with a delivery date of on or about November 28, 2018, at a rate of approximately $550.

d. On or about December 28, 2018, W.H. caused a wire transfer in the approximate amount of $9,650 to be transmitted from a Company A bank account to a recipient in Kherson, Ukraine, related to a counterfeit Brocade license key transaction with a delivery date of on or about November 28, 2018.

h. On or about October 14, 2019, D.R. sent an email addressed to PALEY at Email Account 2 requesting unauthorized Brocade license keys for the Port on Demand and Enterprise Bundle features at a rate of approximately $2,580.

i. On or about October 14, 2019, as a result of his email to PALEY, D.R. received from Email Account 2 unauthorized license keys capable of unlocking the code for the requested advanced features Brocade switches matching the technical information in D.R.'s October 14, 2019 email order.

j. On or about October 22, 2019, D.R. caused a check for approximately $2,580 to be transmitted from a Company B bank account to a GEN8 bank account controlled by PALEY as payment for a counterfeit Brocade license key transaction with PALEY.

s. On or about February 14, 2020, D.R. sent an email to PALEY at Email Account 2 requesting a counterfeit Brocade license key at a rate of approximately $385.

t. On or about February 14, 2020, as a result of his email to PALEY, D.R. received counterfeit license keys for a Brocade switch matching the technical information in D.R.'s February 14, 2020 email order.

u. On or about February 14, 2020, PALEY emailed D.R. an invoice for approximately $385 related to the counterfeit Brocade license key transaction with the delivery date of on or about February 14, 2020. In the email, PALEY requested payment be made out to "GEN8 Services, Inc. Benjamin Paley."

26. On or about April 22, 2021, D.R. emailed PALEY asking for a discount on a bulk order of eleven licenses including Port on Demand, Advanced Extension, Integrated Routing, Extended Fabric, and Enterprise Bundle.

27. The same day, PALEY responded, explaining that the Extended Fabric license was already included in the Enterprise Bundle so it was not necessary to purchase that as well.

28. On or about May 17, 2021, D.R. emailed PALEY a purchase order for six 12 Port On Demand and three Trunking licenses, all of which were unauthorized, at a total rate of $4,680.

29. That same day, D.R. emailed an invoice for the purchase order with a billed amount of $4,680.

30. That same day, in three additional emails, PALEY sent D.R. the unauthorized license keys for the requested licenses.

31. Between on or about May 12 and on or about May 17, 2021, D.R. offered to a customer, provided to a customer, and trafficked those nine unauthorized license keys for financial gain. Company B shipped switches with the nine unauthorized license keys installed on them to a customer in Germany on or about May 18, 2021.

32. On May 20, 2021, D.R. emailed PALEY confirming he would send payment for this invoice.

33. On September 9, 2021, PALEY met with two Confidential Human Sources (CHS), CHS-1 and CHS-2, and discussed including company logos on license documentation to make the licenses appear more legitimate. On September 10, 2021, PALEY provided CHS-1 with samples of license certificates dated January 21, 2019, February 28, 2019, and January 22, 2020, containing trademarks for Brocade, IBM, and HP, , respectively.

34. On or about October 21, 2021, PALEY received an email from CHS-1 with specifications for an IBM switch and a Brocade switch and requesting Port on Demand license keys and software certificates for each one.

35. Later that same day, PALEY emailed CHS-1 unauthorized license keys in the form of two PDFs entitled Software Certificate, each dated October 21, 2021. One contained the IBM trademark along with the license key for a particular license ID and model number for an IBM switch, and the other contained the Brocade trademark along with the license key for a particular license ID and model number for a Brocade switch.

36. On or about November 2, 2021, CHS-1 sent PALEY a purchase order for the two licenses for $225 each for a total of $450.

37. On or about December 13, 2021, CHS-1 emailed PALEY specifications for an EMC switch and a Brocade switch and requested Port on Demand licenses and software certificates for each.

38. Later that same day, PALEY sent two PDF certificates dated December 13, 2021, for two switches, both with DELL EMC trademarks on them.

39. After CHS-1 responded that one of the switches should be associated with Brocade, PALEY sent a corrected certificate with the Brocade trademark for the license key associated with the Brocade switch.

40. On or about January 12, 2022, the CHS emailed PALEY a purchase order for the Port on Demand licenses for $225 each for a total of $450.

All in violation of Title 18, United States Code, Section 371.

**COUNTS TWO AND THREE**
(Trafficking in Circumvention Devices)

41. The factual allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

42. From on or about October 21, 2021, to on or about January 12, 2022, in the District of Minnesota, and elsewhere, the defendant,

**BENJAMIN PALEY,**

did knowingly and willfully, and for purposes of commercial advantage and private financial gain, manufacture, import, offer to the public, provide, and traffic in a technology, product, service, device, component, or part thereof, that was primarily designed and produced for the purpose of circumventing a technological measure that effectively controlled access to a work protected under Title 17 of the United States Code, namely, a copyrighted work, described as Brocade's Fabric Operating System, as set forth below:

| Count | Approximate Dates | Circumvention Device | Quantity |
|---|---|---|---|
| Two | October 21, 2021, to on or about November 2, 2021 | 8 Port on Demand License Key | 1 |
| Three | December 13, 2021, to on or about January 12, 2022 | 8 Port on Demand License Key | 1 |

All in violation of Title 17, United States Code, Sections 1201(a)(2)(A) and 1204(a).

**COUNTS FOUR THROUGH NINE**
(Trademark Infringement)

43. The factual allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

44. From on or about September 24, 2021, to on or about January 12, 2022, in the District of Minnesota, and elsewhere, the defendant,

**BENJAMIN PALEY,**

did intentionally traffic and attempt to traffic in labels and documentation, specifically unauthorized license key certificates, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, using counterfeit marks identical to and substantially indistinguishable from those registered by:

| Count | Registrant | Date of Use |
|---|---|---|
| Four | Dell Inc. | September 24, 2021 |
| Five | HP Hewlett Packard Group LLC | September 24, 2021 |
| Six | Broadcom Inc. | October 21, 2021 |
| Seven | International Business Machines Corporation | October 21, 2021 |
| Eight | Broadcom Inc. | December 13, 2021 |
| Nine | Dell Inc. | December 13, 2021 |

on and in connection with such goods.

All in violation of 18 U.S.C. § 2320.

FORFEITURE ALLEGATIONS

If convicted of any of Counts 4 through 9 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2323, any article, the making or trafficking of which is, prohibited under section 506 of title 17, or section 2318, 2319, 2319A, 2319B, or 2320, or chapter 90, of title 18; any property used, or intended to be used, in any manner or part to commit or facilitate the commission of such a violation; and any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of such a violation.

If any of the above-described property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p).

A TRUE BILL

| | |
|---|---|
| UNITED STATES ATTORNEY | FOREPERSON |